IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. CLARENCE L. CURRIE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-12542     W. Fred Axley, Judge**

_____

**No. W1999-01813-CCA-R3-CD - Filed December 12, 2000**

_____

A jury found the defendant guilty of aggravated assault for shooting a coworker with a handgun during an altercation at their workplace. The trial court sentenced him to five years in the county workhouse, denying his request for probation. The defendant appeals his conviction and sentencing, arguing that the jury's verdict was not supported by the evidence, and that the trial court erred in sentencing him to five years imprisonment. Based upon our review, we conclude that the evidence at trial was sufficient to support the conviction, and that the nature and circumstances of the defendant's offense justifies the sentence imposed. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Christine W. Stephens (on appeal) and Whitten Gurkin (at trial), Memphis, Tennessee, for the appellant, Clarence L. Currie.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; William L. Gibbons, District Attorney General; and Julie Mosley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Clarence L. Currie, was convicted of aggravated assault for shooting a coworker with a handgun, and sentenced to five years imprisonment. After the denial of his motion for a new trial, the defendant filed an appeal to this court, presenting the following issues for review:[1]

---

[1]The defendant's motion for a new trial was denied on September 16, 1999. His notice of appeal was filed on December 6, 1999. Although untimely filed, we consider the appeal on its merits because it appears that the defendant
(continued...)

I.	Whether the evidence was sufficient to support the jury's verdict; and

II.	Whether the trial court correctly sentenced the defendant to incarceration for five years.

Based upon our review, we affirm the judgment of the trial court.

## FACTS

On June 2, 1998, the defendant, a truck driver employed by Central Woodwork, a Memphis door and window manufacturing company, culminated an altercation with a coworker by shooting him with a handgun in the company's shipping office. The altercation began with the sixty-year-old defendant exchanging insults with the twenty-one-year-old victim, Brennon Warr, in the company's warehouse. When the argument escalated into a physical fight, the defendant pulled a .380 caliber pistol on the victim. The victim fled into the shipping office, followed by the defendant, who shot him one time, striking him in the hip. The defendant was subsequently charged with aggravated assault.

The State's first witness at trial was Kevin O'Donnell, operations manager at Central Woodwork. Asked to describe the physical layout of the facility, O'Donnell stated that the warehouse area in which the defendant and the victim began their fight is located immediately in front of the company's shipping and sales offices. He testified that a door from the warehouse leads directly into the company's shipping office, which has glass walls through which the warehouse is visible. A second door at the rear of the shipping office leads into the company's sales office, where nine or ten employees work, and routinely meet with customers. O'Donnell testified that the bullet that struck the victim in the shipping office, passed through the victim's body and the wall separating the shipping and sales offices, and hit a chair, designated for customers' use, in the sales office. Although the nine or ten sales desks were occupied at the time of the shooting, no one was sitting in the chair that the bullet struck.

The victim testified that two weeks before the shooting, he and the defendant argued over money that the defendant owed him for drugs. He said that when he encountered the defendant in front of the shipping office on the day that he was shot, the defendant began "talking mess" to him, and made an obscene remark about his mother. In response, he walked up to the defendant and told him that they should hold the argument until they both were off work in fifteen or twenty minutes. He testified that he then turned to walk away, and "That's when he followed me towards the time

[1](...continued)
was without counsel for a number of weeks, after trial counsel was allowed to withdraw from representation, and before appellate counsel was appointed. Tenn. R. App. P. 4(a); State v. Johnson, 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998).

clock, and we got to arguing face to face then, and that's when he hit me, and I hit him back, and then we got to scuffling a little bit. He pulled a gun out, and he shot me."

When he saw the defendant's gun, the victim ran into the shipping office in an effort to escape. Upon seeing that the defendant had followed and was pointing the gun at him from the doorway of the shipping office, the victim ran through the second door into the sales office. The defendant shot him in the hip before he made it through the door.

On cross-examination, the victim testified that the defendant had also pulled a pistol on him during their earlier argument over money, and acknowledged having told a coworker, regarding the incident, that he was "going to have to take care of it."

Several Central Woodwork employees witnessed the June 2, 1998, altercation. Larry Minor, shipping supervisor, watched the fight unfold while standing in the doorway of the shipping office. He testified that the men first called each other names, and then "just bear hugged one another for a while, you know, because somebody was trying to hit somebody." Minor said that the victim then started running toward the shipping office "saying that he [the defendant] had a gun." The victim ran past him into the shipping office, followed by the defendant, who stopped at the doorway to the office, approximately one and one-half feet from Minor, and fired his pistol at the fleeing victim. After the defendant fired one shot, Minor grabbed the defendant in a bear hug and shook him, forcing him to drop the gun to the floor.

Thomas Rush, a truck driver, testified that he was sitting at a desk in the shipping office when he heard the defendant and the victim arguing in the warehouse outside the offices. Rush said that when he looked out through the glass walls of the office, he saw "Brennon and him scuffling. Then they was shoving and somebody fell. Then he came running through the office door there–Brennon did. Then Currie come behind him with the gun shooting." Rush said that the victim continued into the sales office after being shot, and that Minor pushed the defendant back into the warehouse and disarmed him.

Harold Houston Payne, maintenance supervisor, said that he was walking past the defendant and the victim when the altercation started. He heard them arguing, but could not understand what they were saying. He testified that, after exchanging some angry words with the defendant, the victim walked off, but that he came back when the defendant told him to "stick my dick up your mother's ass." After that, the men "tied up" wrestling. He saw the defendant pull a gun out and try to hit the victim on the head with it. Payne said that when the victim saw the gun, "he took off running" and tried to go into the sales office, but that the defendant "followed him and shot him just as he went in the door."

Sergeant Carolyn Williams of the Memphis Police Department, who investigated the incident, testified that the defendant admitted shooting the victim. The defendant's taped statement was played before the court. Neither the tape, nor a transcript of the defendant's statement, was included in the record provided to this court. However, the trial court's remarks during discussions

with counsel regarding proposed jury instructions suggest that, in his statement, the defendant justified his use of the gun as self-defense.

Three Central Woodwork employees testified on the defendant's behalf. Jim Terry said that he had seen the defendant and the victim "exchanging words on the dock" about two weeks before the shooting. He could not say, however, whether the men had been arguing, or merely talking. Calvin Sharp testified that, approximately one day before the shooting, the victim told him that he was "going to get" the defendant if the defendant did not pay him the money that he was owed.

Elton Worles testified that, on the afternoon of the shooting, the defendant came into the warehouse and began to tell him about some fellow employees who had threatened him earlier that day, by pointing a two-by-four at him as he drove his delivery truck out of the facility. Worles said that, as the defendant related the incident to him, the victim, who apparently overheard the conversation, walked over and began to insult the defendant. Worles testified that the men then passed insults until the victim grabbed the defendant's shirt to pull it over his head, and the defendant swung at the victim. After a "little tussle," the victim pushed the defendant over a dolly. At that point, the defendant pulled out a gun. Worles witnessed nothing further, testifying that, at the sight of the gun, he "broke and ran and got out [of] the way."

On cross-examination, Worles acknowledged that, because he had looked away at one point during the portion of the fight, it was possible that the defendant could have swung at the victim before the victim grabbed the defendant's shirt.

The deposition testimony of Dr. Samuel T. Summers, the defendant's treating physician, was read into evidence. Summers testified that the defendant suffered from narrowing of the arteries in his legs, and that, prior to the shooting, he had twice undergone bypass surgery for that condition. Summers opined that, as a result, the defendant's physical strength and stamina would be less than that of a man of similar age who did not suffer from the same condition.

The State presented the rebuttal testimony of Central Woodwork employees Lawrence Boyd and Joseph Bougard, who both testified that the defendant had thrown the first blow in the fight.

After deliberation, the jury found the defendant guilty of aggravated assault. When asked at the sentencing hearing if he understood that what he had done was wrong, the defendant answered:

> I wasn't thinking rationally, no doubt about it. I am 61 years old and I let him raffle [sic] me, you know. And he is the culprit. He is the one that, you know, he started after me, you know. For three weeks he walk [sic] around there talking about what he is going to do to me. I am going to kick your old ass. And I kept telling him that wasn't going to happen.

-4-

See, if, you know, I was trying that–my record speak [sic] for itself, I am a changed person. You know, because if that had been an earlier time in my life, he never would had did that, you know. He is a coward. I am 61 years old. He is 20. He outweighs me almost 90 pounds. He grabbed me first. I had the pistol when I first came there. But that morning when he picked up the two-by-four at me, I got on in the truck. I had the pistol then.

When I came back up in the place that evening, if I wanted to shoot him I would had pulled it out and shot him then. I never shot him or shot at him until he grabbed me and tried to put me down on my back. I wasn't going to let that happen. I wasn't going to let him get on top me. And the rest of them was starting, it was like a circle, like in high school, in grade school, it was like a circle. They were standing there, you understand, trying to egg him on. He was a coward. My son would never do that to an old man.

On cross-examination, the defendant stated that he did not get into fights, and that his previous arrests for assault and battery "wasn't for fighting." The defendant testified that he was not guilty of many of the offenses for which he had previously been convicted. He said that he had "never" burglarized a house or robbed anybody, despite his criminal record which indicated that he had been convicted for those crimes. He explained his convictions for disturbing the peace by stating, "you basically just raise your voice and get a disturbing the peace. Look at my color. My skin is my sin." He insisted that he shot the victim in self-defense, and that the shooting would not have occurred if the victim "hadn't never put his hands on me." Pulling the gun, he said, was the only means he had to protect himself from the much younger and stronger victim. When asked to explain why he shot the victim from behind as the victim was running away, the defendant first stated that "something just came over me," and then said, "I don't know whether he was running or not." However, when asked why he had called the victim a coward, he answered, "What made him run? What made him run?"

In sentencing the defendant, the trial court issued both verbal findings of fact, at the conclusion of the evidence, and a written order, which was entered the same day. Because all but two of his previous convictions had occurred more than ten years previously, the trial court classified the defendant as a Range I, standard offender. The trial court found that the defendant: had a history of previous criminal convictions and criminal behavior in addition to those required to establish the range; had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; possessed or employed a firearm during the commission of the offense; had no hesitation about committing the crime when there was a threat to the lives of others; committed a felony that involved the threat of death or bodily injury to another person and had previously been convicted of a felony that resulted in bodily injury; and willingly inflicted bodily injury upon another person. See Tenn. Code Ann. § 40-35-114(1), (8)-(12) (1997). Rejecting the defendant's argument that he acted under strong provocation, see Tenn. Code Ann. § 40-35-113(2)

(1997), the trial court found no applicable mitigating factors, and sentenced the defendant to five years imprisonment, denying his request for probation.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first argues that the evidence was insufficient to support the jury's verdict. He asserts that the victim assaulted him, and contends that his actions qualified as justifiable self-defense, under Tennessee Code Annotated Section 39-11-611(a ) (1997), which states:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

The defendant argues that the evidence presented at trial, showing that the victim had threatened "to get" him, combined with the fact that the victim was much younger, heavier, and stronger than he, supports a finding that he acted in the reasonable fear that the victim posed an imminent threat of death or great bodily harm to him. The defendant acknowledges that the jury was instructed on self-defense; he argues, however, that the verdict shows that the jury "did not properly consider the defense," and that the trial court erred in refusing to charge the jury on the lesser offense of assault.

The State argues that the evidence presented at trial was sufficient to support the jury's verdict, and that, by finding the defendant guilty of aggravated assault, the jury rejected his claim of self-defense.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict

by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of a violation of Tennessee Code Annotated Section 39-13-102(a), which provides:

> A person commits aggravated assault who:
>
> (1) Intentionally or knowingly commits an assault as defined in § 39-13-101[2] and:
>
> (A) Causes serious bodily injury to another; or
>
> (B) Uses or displays a deadly weapon; or
>
> (2) Recklessly commits an assault as defined in § 39-13-101(a)(1) and:

---

[2] Tennessee Code Annotated Section 39-13-101(a) (1997) provides:

A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another; or

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

(A) Causes serious bodily injury to another; or

(B) Uses or displays a deadly weapon.

Although the trial court initially expressed some doubt as to whether the defendant had properly raised the defense at trial, the record reveals, and the defendant acknowledges, that the court included a full and detailed charge on self-defense in the instructions issued to the jury. After deliberating, the jury returned with a verdict finding the defendant guilty of aggravated assault.

The evidence presented at trial supports the jury's verdict. The evidence showed that: the defendant pulled a handgun on the victim during a workplace fight; the victim fled at the sight of the gun; the defendant chased the victim to the doorway of the shipping office; the victim then attempted to escape into the sales office; and the defendant shot the victim from behind as he was running through the sales office door. Moreover, viewed in the light most favorable to the State, the evidence shows that it was the defendant who initiated the fight, confronting the victim in the warehouse, and throwing the first blow.

The defendant argues that the jury's verdict shows that it failed to properly consider his defense of self-defense. We disagree. In order to conclude that the defendant acted in self-defense, the jury would have had to find that the defendant shot the victim while under a *reasonable* belief that such force was *immediately necessary* to protect himself from *imminent* death or serious bodily injury at the hands of the victim. The evidence at trial, however, showed that the victim was shot after he had already withdrawn from the fight and was attempting to leave. Thus, even had the victim posed a real threat of immediate, serious bodily injury or death to the defendant during the fight, the threat was over by the time the defendant shot the victim. Accordingly, we conclude that the evidence is sufficient to sustain the conviction.

The defendant also argues in his appellate brief that the trial court erred in failing to charge the jury on the lesser charge of assault. However, this issue was waived because it was not included in the motion for a new trial. Tenn. R. App. P. 3(e); State v. Maddox, 957 S.W.2d 547, 553 (Tenn. Crim. App. 1997). Notwithstanding the waiver, the defendant would not be entitled to relief if we considered this issue on the merits. State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999) (holding that there must be a factual basis before an instruction on a lesser-included offense is submitted to the jury).

## II. Sentencing

The defendant next argues that the trial court erred in sentencing him to five years imprisonment. He contends that the trial court erred in finding that strong provocation was not a mitigating factor, and argues that the trial court failed to properly consider other mitigating factors. The defendant also argues that the trial court erred in denying him probation. The State argues that the trial court did not abuse its discretion in sentencing the defendant to five years imprisonment.

Appellate review of a trial court's sentencing is *de novo* on the record, with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported by the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence, even if we would have reached a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). If, however, the trial court applied inappropriate factors, the sentence's presumption of correctness fails. See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992) (citing State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)).

## A. Applicability of Enhancement and Mitigating Factors

In its verbal findings of fact at sentencing, the trial court specifically mentioned only three of the six enhancement factors that it ultimately applied. It mentioned only one of the defendant's proposed mitigating factors. The trial court's written findings of fact consisted of a preprinted form containing, *inter alia*, a list of all statutory enhancement and mitigating factors, with a place beside each factor for the court to circle either "yes" or "no," according to its determination of the factor's applicability. The trial court circled "yes" for six enhancement factors, and "no" for two mitigating factors, with little or no explanation provided for its determinations. Therefore, we review the enhancement and mitigating factors *de novo*, without a presumption of correctness.

The six enhancement factors applied by the trial court are as follows:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . . .

> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(11) The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and

(12) During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim[.]

Tenn. Code Ann. § 40-35-114(1), (8)-(12) (1997). In his brief, the defendant does not dispute specifically the application by the trial court of any of these enhancement factors but, instead, argues that the five-year sentence was improper. Accordingly, we will consider whether these factors were properly applied by the trial court.

As to factor (1), the defendant's criminal record showed an extensive history of prior convictions, beginning in 1958, and ending in August 1995, when he was arrested for the unlawful manufacture and sale of drugs and for possession of unlawful drug paraphernalia. For the 1995 offenses, the defendant was allowed to plead guilty to a lesser charge of drug possession, sentenced to eleven months and twenty-nine days, suspended, and placed on probation. In 1974, he was convicted of three counts of the sale of heroin and received three concurrent five-year sentences. In 1966, he was convicted of smuggling heroin, receiving a three-year suspended sentence with five years probation. Additionally, according to the presentence report, the defendant was convicted in 1960 of robbery, although the length of the sentence is not disclosed. Enhancement factor (1), therefore, is clearly applicable.

The defendant's criminal record also reveals an arrest for violation of probation and several arrests and convictions for crimes committed while on probation. Thus, enhancement factor (8) is applicable.

Factor (9) was not applicable because the use of a deadly weapon was inherent in the offense of aggravated assault. State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); State v. Jeffrey Eugene Wright, No. M1999-00647-CCA-R3-CD, 2000 WL 264224, at *6 (Tenn. Crim. App. Mar. 10, 2000).

Factor (10), the defendant had no hesitation about committing the offense when the risk to human life was high, is certainly applicable and entitled to the great weight that the trial court gave it. By firing his pistol in a crowded office, the defendant placed at risk the lives of over a dozen coworkers. In addition, the defendant potentially placed at risk the lives of the company's customers, who, according to operations manager Kevin O'Donnell, frequently meet with sales employees in the sales office. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995) (stating that factor (10) is properly "applied in situations where individuals other than the victim are in the area and subject to injury").

We conclude that factors (11) and (12) were not applicable. Factor (11) requires that the defendant have a previous conviction involving death or bodily injury to another and, according to his record, that was not the case. Factor (12) requires that, during the commission of the felony, a person other than the victim was killed or received serious bodily injury. Since only the victim was injured, this factor does not apply.

In his notice of mitigating factors, the defendant argued that: his conduct did not cause serious bodily injury; he acted under strong provocation; substantial grounds existed to excuse or justify his conduct; and he committed the offense under circumstances that show he did not have a sustained intent to commit a crime. See Tenn. Code Ann. § 40-35-113(1)-(3), (11) (1997). After reviewing the record, we conclude that none of these mitigating factors apply.

Mitigating factor (1) applies only if the defendant's criminal conduct "neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (1997). While it is true that the victim was not seriously injured, the defendant's conduct threatened serious bodily injury not only to the victim, but also to the other Central Woodwork employees present in the area. The defendant's claims that he acted under strong provocation (factor (2)); his actions were justified (factor (3)); and he lacked a sustained intent to commit the crime (factor (11)); are not supported by the record. The evidence in this case showed that the defendant chased the fleeing victim a distance of approximately twenty feet before firing his gun, and that, at the time that he was shot, the victim had his back to the defendant and was attempting to flee. Under these circumstances, we conclude that the defendant's proposed mitigating factors are inapplicable to his crime.

In the absence of mitigating factors, and applying great weight to the applicable enhancement factors, we conclude that the sentence of five years imposed by the trial court is justified by the record.

## B. Denial of Probation

The defendant points out that he was eligible for probation, and argues that the trial court erred in denying his request for probation. The defendant asserts that he is a suitable candidate for probation. In support, he cites, *inter alia*, his advanced age, health problems, marital status, and long history of steady employment.

The defendant is correct that he was eligible for probation. <u>See</u> Tenn. Code Ann. § 40-35-303(a) (1997) ("A defendant shall be eligible for probation . . . if the sentence actually imposed upon such defendant is eight (8) years or less . . . "). Even though eligible, however, the defendant was not automatically entitled to probation as a matter of law. <u>See</u> Tenn. Code Ann. § 40-35-303(b) (1997). The burden was upon the defendant to show that he was a suitable candidate for probation. <u>State v. Goode</u>, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); <u>State v. Boggs</u>, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); <u>see</u> Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant was required to "demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" <u>State v. Bingham</u>, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting <u>State v. Dykes</u>, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

In determining whether or not to grant probation, the trial court should consider, among other factors, the nature and circumstances of the offense, the defendant's criminal record, the defendant's present condition, whether a sentence other than probation would provide an effective deterrent to others likely to commit similar crimes, and whether a sentence of probation would unduly depreciate the seriousness of the offense. <u>See</u> <u>State v. Davis</u>, 940 S.W.2d 558, 559 (Tenn. 1997); <u>Goode</u>, 956 S.W.2d at 527; <u>Bingham</u>; 910 S.W.2d at 456.

In denying the defendant's request for probation, the trial court emphasized the seriousness of the offense, the need to protect society from the defendant, and the interest in sending a message to others that workplace violence would not be tolerated.

Tennessee Code Annotated Section 40-35-103(1)(B) allows a trial court to base a sentence of confinement on a finding that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses[.]" The record in this case supports the trial court's reliance on these factors in sentencing the defendant to imprisonment without probation. <u>State v. Ashby</u>, 823 S.W.2d 166, 170 (Tenn. 1991); <u>State v. Daryl Hooper</u>, No. M1997-00031-SC-R11-CD, 2000 WL 1357520, at *8-9 (Tenn. Sept. 21, 2000); <u>State v. Grigsby</u>, 957 S.W.2d 541, 545-46 (Tenn. Crim. App. 1997). Additionally, we conclude that subparts 103(1)(A) and (C) apply because, respectively, of the defendant's long history of criminal conduct and because less restrictive measures than confinement have failed to rehabilitate the defendant, and that the facts of the crime, shooting the victim in a crowded workplace, are "especially . . . shocking, reprehensible [and] offensive," making confinement appropriate. <u>State v. Hartley</u>, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). We find no error in the trial court's denial of probation, and therefore affirm both the length and manner of sentencing imposed.

## CONCLUSION

After a thorough review of the record, we conclude that the evidence was sufficient to convict the defendant of aggravated assault.  We conclude that the enhancement factors applicable to the case, combined with the lack of mitigating factors, support the sentence imposed.  We further conclude that the trial court's denial of probation was justified.  Therefore, we affirm both the judgment of conviction, and the length and manner of sentencing imposed.

_____
ALAN E. GLENN, JUDGE