# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JULY 1998 SESSION



FILED

August 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9712-CC-00460 |
| Appellee, | ) | |
| | ) | TIPTON COUNTY |
| VS. | ) | |
| | ) | HON. JOSEPH H. WALKER, III, |
| JOHN MALCOLM JOHNSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a Child) |

**FOR THE APPELLANT:**

**GARY F. ANTRICAN**
**(At Trial and On Appeal)**
District Public Defender

**DAVID S. STOCKTON**
**(At Trial and On Appeal)**
Assistant Public Defender
118 E. Market Street
P.O. Box 700
Somerville, TN  38068-0700

**KEMPER B. DURAND**
**(Appeal Only)**
One Commerce Square
Twenty-Ninth Floor
Memphis, TN  38103

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MARVIN E. CLEMENTS, JR.**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**ELIZABETH T. RICE**
District Attorney General

**J. WALTER FREELAND, JR.**
Assistant District Attorney General
302 E. Market Street
Somerville, TN  38068

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

## OPINION

The defendant, John Malcolm Johnson, was convicted by a Tipton County jury of one (1) count of rape of a child, and the trial court sentenced him to fifteen (15) years. On appeal, defendant presents the following issues for our review:

> (1) whether the trial court erred in denying defendant's request for a continuance;
>
> (2) whether the trial court erred in finding that the victim was competent to testify;
>
> (3) whether defendant was denied his right to a fair trial due to the racial composition of the jury;
>
> (4) whether the evidence was sufficient to support the jury's finding of guilt;
>
> (5) whether defendant was denied his constitutional rights to due process of law and against double jeopardy; and
>
> (6) whether the trial court erred in denying defendant's motion to suppress his statement given to law enforcement authorities.

After a thorough review of the record, we find no reversible error. Accordingly, the judgment of the trial court is affirmed.

## FACTUAL BACKGROUND

The defendant was married to Janet Johnson, and they had three children. In the early morning hours of November 9, 1996, Janet awoke and noticed that her bedroom door was closed. Since she had not closed the door, she decided to check on her children. When she went into her daughters' bedroom, her eleven (11) year old daughter, J.J.[1], was not there. Janet walked into the living room and turned on a light. She saw defendant lying on his back on the couch, and J.J. was sitting astride defendant. Defendant was totally nude, and his penis was partially erect. J.J. was wearing only a pajama top.

Janet took J.J. into a back bedroom, and defendant followed them.

---

[1] It is the policy of this Court not to reveal the names of minor victims of sexual abuse.

Defendant stated, "Janet, I'm sorry." He then apologized to J.J.

J.J. testified at trial that her father came into her bedroom during that particular night. He brought her into the living room and told her to take off her underwear. He was not wearing any clothes. Defendant then laid on the couch on his back and told her to lay on top of him. She further testified as follows:

Q.      And do you know where your father's penis was?

A.      It was in my vagina.

Q.      Okay. Was it a little bit or a lot in your vagina?

A.      A little bit.

. . . .

Q.      Did -- When his penis was in your vagina, did it hurt you?

A.      Yes, sir.

When her mother walked into the room, J.J. picked up her underwear and went back to her bedroom.

Investigator Linda Gamblin with the Covington Police Department testified that on November 11, she spoke with defendant concerning the incident. She read defendant his <u>Miranda</u> rights, and defendant signed a form waiving those rights. She testified that defendant did not appear to be under the influence of any intoxicant at the time of the interview. Defendant then gave a statement where he admitted that he took J.J. into the living room on the night in question, told J.J. to take off her underwear, and then told her to lay on top of him. However, in the statement, defendant denied penetrating J.J.

Defendant testified on his own behalf at trial. He stated that he had been smoking crack cocaine and drinking beer on the night of the incident. He testified that when he returned home from band practice that night, he fell asleep on the couch. He woke up, and Janet began accusing him of sexually assaulting his daughter. He testified that he could not recall what he told Investigator Gamblin on November 11 because he was under the influence of crack cocaine at the time. However, he denied penetrating his daughter, J.J. He also intimated that his wife fabricated this incident as a means to punish him for using drugs. He stated that

3

she once told him, "[i]f I got back on crack, . . . she'd make my life a living hell."

The jury returned a guilty verdict for rape of a child. Defendant now brings this appeal as of right.

## UNTIMELY MOTION FOR NEW TRIAL

Initially, we must note, as the defendant concedes, that his motion for new trial was untimely filed. The judgment of conviction was entered on August 29, 1997, and the motion for new trial was filed on October 27, 1997. A motion for a new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b); *see also* State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The thirty (30) day provision is jurisdictional, and an untimely motion is a nullity. State v. Martin, 940 S.W.2d at 569. Unlike the untimely filing of the notice of appeal, this Court does not have the authority to waive the untimely filing of a motion for new trial. *See* Tenn. R. App. P. 4(a). The defendant, therefore, relinquishes the right to argue on appeal any issues that were or should have been presented in the motion for new trial. Martin, 940 S.W.2d at 569. However, this Court, in its discretion, may also take notice of an error which affects a substantial right of the defendant where it may be necessary to do substantial justice. Tenn. R. Crim. P. 52(b); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980).

### A. Denial of Continuance

Defendant firstly contends that the trial court erred in denying defendant's request for a continuance due to the state's alleged discovery violations. However, this issue is waived by defendant's failure to timely file the motion for new trial. Martin, 940 S.W.2d at 569. Nevertheless, this Court has reviewed the record and concludes that the trial court did not abuse its discretion in denying defendant's request for a continuance. *See* State v. Hurley, 876 S.W.2d 57, 65 (Tenn. 1993); State v. Goodwin, 909 S.W.2d 35, 44 (Tenn. Crim. App. 1995).

4

## B. Victim's Competency

Defendant also alleges that the trial court erred in finding that the victim, J.J., was competent to testify. This issue is also waived by the untimely motion for new trial. Martin, 940 S.W.2d at 569. Nevertheless, after a review of the victim's testimony, we find no abuse of discretion by the trial court in finding the victim competent to testify.[2] See State v. Hallock, 875 S.W.2d 285, 293 (Tenn. Crim. App. 1993).

## C. Racial Composition of Jury

---

[2] In support of his argument that the victim was incompetent to testify, defendant complains that the victim was not able to answer many of defense counsel's questions on cross-examination. The victim was eleven (11) years old, and there was testimony that she had a learning disability. However, many of defense counsel's questions were convoluted, confusing, obscure and vague. The following excerpts are some of the questions asked by counsel:

> Q.        If that statement were untrue or part of it were untrue or you were unsure about that, would it be possible that you are unsure about some of the other things you've talked about here?
>
> . . . .
>
> Q.        Would it be accurate and would I be speaking correctly if what you're telling me right now is that a few minutes ago you shook your head no when he asked you if you knew the difference and you agree now that you don't know the difference? Would that be true?
>
> . . . .
>
> Q.        Would it be accurate to say that with regard to some of the things you've said today that you're not sure whether you've been telling the truth about all of them or not? Would that be accurate?
>
> . . . .
>
> Q.        Let me rephrase that. Am I -- Do you -- Can you give me an explanation about whether or not this might have been a dream or it may have been - some of the things you said today could be inaccurate or not true? Is that possible?
>
> . . . .
>
> Q.        . . . Well, is it possible sometimes that your feelings are products of dreams or incorrect memories of what happened?

As appellate judges we confess our inability to comprehend the meaning of some of these questions. We fail to understand how an eleven (11) year old child with a learning disability could be expected to respond to such questions.

5

Defendant further asserts that he was denied his right to a fair trial due to the racial composition of the jury. *See* Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This issue is waived for the failure to timely file the motion for new trial. Martin, 940 S.W.2d at 569. Furthermore, defendant concedes that no Batson challenges were made during jury selection, and the issue is also waived for this reason. *See* Tenn. R. App. P. 36(a).

## SUFFICIENCY OF THE EVIDENCE

In his next issue, defendant challenges the sufficiency of the convicting evidence.[3] Defendant claims that there was no testimony that he penetrated the victim, save that of the victim, whom he alleges to be incompetent to testify. Therefore, he contends that no rational trier of fact could have convicted him of rape of a child.

### A.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any

---

[3] The failure to timely file a motion for new trial does not result in a waiver of this issue. *See* State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997).

6

rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

**B.**

Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body." Tenn. Code Ann. § 39-13-501(7).

**C.**

The eleven (11) year old victim testified that her father brought her into the living room and told her to take off her underwear. Defendant then reclined on the couch, totally nude, and told the victim to lay on top of him. He put his hands on her "behind" and then put his penis in her vagina. Furthermore, Janet Johnson's testimony corroborated the victim's testimony. She testified that she saw defendant lying nude on the couch with a partially erect penis. J.J. was sitting astride defendant and was wearing only a pajama top.

Although defendant claims that the victim was incompetent to testify, the trial court determined that she was competent. We have previously stated that the trial court did not abuse its discretion in this regard. *See* State v. Hallock, 875 S.W.2d at 293. Moreover, defense counsel vigorously cross-examined the victim, and the jury was able to observe this examination and assess the victim's credibility accordingly. It is beyond the province of this Court to second guess this assessment. Indeed, questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The evidence was sufficient for a rational trier of fact to find that defendant

7

sexually penetrated his daughter. This issue is without merit.

## DUE PROCESS AND DOUBLE JEOPARDY

Defendant next asserts that he was denied his rights to due process of law and against double jeopardy when he was held without bond for three (3) days in the Tipton County Jail. He claims that his detention was punitive, not remedial. He, therefore, urges this Court to dismiss the subject indictment.[4]

### A. Background

On Monday, November 11, defendant was arrested on the present offense. This was Veteran's Day, a state holiday. He was brought before a magistrate on Tuesday, November 12, for his initial appearance in General Sessions Court where an arrest warrant was issued. *See* Tenn. R. Crim. P. 5(a). During this proceeding, the court denied defendant bail. On Thursday, November 14, the General Sessions judge set bail, which was posted by defendant's family that evening. Defendant was thereafter released.

The trial court found that defendant's detention until a bond was set did not subject him to double jeopardy as the detention did not constitute "punishment" under the United States Constitution. The court also implicitly found that defendant was afforded sufficient procedural due process, as he was brought before a magistrate within a day of his arrest. Therefore, the trial court denied defendant's motion to dismiss the indictment.

### B. Double Jeopardy

The resolution of defendant's double jeopardy claim turns upon the Tennessee Supreme Court's recent holding in State v. Pennington, 952 S.W.2d 423 (Tenn. 1997). In Pennington, the Court recognized that jeopardy does not attach in a pre-trial proceeding. 952 S.W.2d at 422. The Court noted,

---

[4] This issue is not waived by the untimely filing of the motion for new trial. If defendant's argument on this issue is correct, a new trial would not be granted. The indictment would be dismissed. Untimely filing of the motion for new trial waives only the issues which may result in the granting of a new trial. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989).

8

to be put in jeopardy, the defendant must be "subject to 'criminal prosecution' and put to trial." United States v. Grisanti, 4 F.3d 173, 175 (2nd Cir. 1993). The proceeding must be "essentially criminal" and constitute an action "intended to authorize criminal punishment to vindicate public justice." Id. (citing Breed v. Jones, 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975), and United States ex rel Marcus v. Hess, 317 U.S. 537, 548-49, 63 S. Ct. 379, 386, 87 L. Ed. 443 (1943)).

Id. If the purpose of detention is remedial, as opposed to punitive, then the double jeopardy clause is not implicated. Id. at 422-23; State v. Coolidge, 915 S.W.2d 820, 823 (Tenn. Crim. App. 1995). Pre-trial detention in order to "assure a defendant's presence at trial" is a legitimate remedial purpose. State v. Coolidge, 915 S.W.2d at 823.

In the present case, the defendant was detained for three (3) days prior to his release on bond. Jeopardy did not attach at this point. Furthermore, we agree with the trial court's finding that defendant's detention was not punitive in nature. Therefore, we conclude that defendant was not subjected to double jeopardy in violation of the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Tennessee Constitution.

This issue is without merit.

### C. Due Process

Defendant also claims that his prolonged detention without a bond setting violates his rights to due process of law. "Pre-trial detention that is remedial as distinguished from punitive is permissible provided that the individual is afforded sufficient procedural due process." Pennington, 952 S.W.2d at 423 (citing United States v. Salerno, 481 U.S. 739, 751, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987); Schall v. Martin, 467 U.S. 253, 264, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984); Bell v. Wolfish, 441 U.S. 520, 536, 99 S.Ct. 1861, 1872-73, 60 L.Ed.2d 447 (1979)). However, defendant was provided sufficient procedural due process. Defendant was brought before a magistrate within a day of his arrest as mandated by Tenn. R. Crim. P. 5(a).

Although the General Sessions Court initially denied the defendant bond, the allegation that such a decision was erroneous does not give rise to the relief sought. The failure of the General Sessions Court to set bond on November 12 does not

9

give rise to a dismissal of the indictment.

This issue has no merit.

## MOTION TO SUPPRESS

Defendant contends the trial court erred in refusing to suppress his pre-trial statement to the authorities. In spite of the untimely filing of the motion for new trial, we elect to address this issue to determine whether the refusal to suppress was plain error. We find it was not.

Only two witnesses testified at the motion to suppress, Investigator Linda Gamblin and Officer Darryl Smith. The defendant did not testify at the motion to suppress; however, he did testify at trial as to certain matters that would be relevant to the motion. This Court may consider those portions of his trial testimony that are relevant to the motion to suppress. *See* State v. Henning, __ S.W.2d __ (Tenn. 1998).

### A. Facts

Investigator Gamblin was personally acquainted with the defendant. The defendant was a former police officer with the Covington Police Department as well as the former police partner and former neighbor of Investigator Gamblin.

Defendant's wife, Janet Johnson, was a school teacher. On November 11, 1996, at approximately 7:00 a.m, she was on her way to school and spoke with Investigator Gamblin at the Covington Police Department. They "talked just briefly," and the officer was informed that Janet "suspected her husband had forged [some checks]." Janet also stated there had been "inappropriate contact" between the defendant and their daughter. According to Investigator Gamblin, Janet did not go into a "great amount of detail." Janet advised Investigator Gamblin that she made the defendant leave the residence. Investigator Gamblin advised Janet that she would need to talk with the child that afternoon.

Later in the morning Janet contacted Investigator Gamblin and informed her that the defendant was back in the residence, and Janet wanted him removed.

10

Investigator Gamblin desired to speak with the defendant and asked Officer Smith to bring the defendant to the police department "for investigation." Investigator Gamblin testified this was "not an arrest. I just wanted to speak with him."

Officer Smith knocked on the front door of defendant's residence and, after no response, went inside where he discovered the defendant taking a shower. Officer Smith informed the defendant he was being taken to the station "for investigation purposes" and would have to be handcuffed in accordance with department policy. Being a former police officer with that department, the defendant indicated that he understood the "policy" and had "no problem" with it. The defendant did not consider himself "under arrest," but rather understood he was being taken to the station to be interviewed by Investigator Gamblin. Defendant was transported to the police department in a patrol unit.

Upon his arrival at the police station at approximately 11:00 a.m. Investigator Gamblin advised the defendant of his Miranda rights. As a former police officer, the defendant was very familiar with the Miranda rights and understood them before they were given to him by Investigator Gamblin. Defendant then signed a waiver and gave an incriminating statement relating to inappropriate sexual contact with the child. After the giving of the statement, the defendant was formally arrested.

### B. Trial Court Findings

The trial court found that "the officer had probable cause to order the arrest of the defendant based on allegations that he had forged checks and had inappropriate sexual contact with the minor under the age of thirteen (13) years." A trial court's findings of fact in a suppression hearing are conclusive unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996). However, the application of the law to the facts found by the trial court is a question of law which this Court reviews *de novo*. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). We proceed to review the trial court's ruling under these principles.

### C. Seizure

Defendant contends he was unlawfully seized in his residence without

11

probable cause. We agree.

We first determine whether the defendant was, in fact, arrested or seized at his residence. The crucial inquiry is whether he was "seized" for Fourth Amendment purposes. Whenever an officer accosts an individual and restrains the freedom to walk away, the officer has "seized" that person for Fourth Amendment purposes. State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). Regardless of the policy of the Covington Police Department or the subjective intentions of the officers, the handcuffing of the defendant and transporting him to the police department constituted a seizure.

Furthermore, this was not an investigatory stop or detention which, although may be justified upon reasonable suspicion supported by specific and articuable facts, must be temporary and for a limited purpose. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Simpson, ___ S.W.2d ___ (Tenn. 1998). "[D]etention for custodial interrogation - regardless of its label - intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." Dunaway v. New York, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L. Ed.2d 824 (1979). The defendant was detained for custodial interrogation; therefore, Dunaway is controlling.

### D. Probable Cause

Having determined that the defendant's seizure did not qualify as an investigatory detention, the seizure was much more akin to a formal arrest and must have been founded upon probable cause. State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982). An officer in Tennessee may effect a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3). Improper sexual contact with a child and forgery, regardless of the amount of the forged instrument, are felonies. *See* Tenn. Code Ann. §§ 39-13-504(a)(4), 39-14-114(c).

Whether probable cause exists depends upon whether the facts and

circumstances and reliable information known to the police officer at the time of the arrest "were sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); State v. Marshall, 870 S.W.2d 532, 538 (Tenn. Crim. App. 1993). Probable cause must be more than mere suspicion. State v. Melson, 638 S.W.2d at 350. Generally, the subjective motivations and characterizations by the police officers are not determinative as to the legitimacy of an arrest, search or seizure. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997).

Under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable with the state having the burden to demonstrate that the seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); State v. Yeargan, 958 S.W.2d at 629.

Investigator Gamblin testified at the motion to suppress that she was informed by defendant's wife that there had been some "inappropriate contact" between the defendant and their daughter. Janet did not give Investigator Gamblin any details concerning the "inappropriate contact," and Gamblin indicated that she needed to speak with J.J. later that day. This information, standing alone, is insufficient to warrant a reasonable person in believing that defendant had in fact committed a felony sexual offense. The officer did not have probable cause to arrest defendant for sexual abuse at that time.

Similarly, according to Investigator Gamblin, Janet "suspected" the defendant of forgery. Janet and Investigator Gamblin "talked just briefly" concerning this matter. Investigator Gamblin did not testify about any factual details conveyed to her by Janet. Again, probable cause did not exist for the warrantless arrest of defendant for forgery based upon this conversation.

We, therefore, conclude the trial court erred in its legal determination that

13

probable cause existed for the arrest of defendant.[5]

### E. "Fruit of the Poisonous Tree"

Because we have determined that defendant was illegally seized without probable cause, our next inquiry becomes whether defendant's statement was illegally obtained as a result of the illegal seizure. The analysis used to determine admissibility of such a statement is the "fruit of the poisonous tree" analysis, as opposed to a voluntariness test. Brown v. Illinois, 422 U.S. 590, 601, 95 S.Ct. 2254, 2260-61, 45 L.Ed.2d 416 (1975); State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996). In order to ascertain whether a statement obtained in violation of the Fourth Amendment should be suppressed, the primary inquiry is "whether [the statement] 'was sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" Brown v. Illinois, 422 U.S. at 599, 95 S.Ct. at 2259 (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 416-17, 9 L.Ed.2d 441 (1963)); see also State v. Huddleston, 924 S.W.2d at 674.

Although this determination is made pursuant to the facts of each case, the following four considerations are helpful in this determination:

> (1) the presence or absence of Miranda warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct.

Huddleston, 924 S.W.2d at 674.

### 1. Miranda Warnings

Applying the above factors to the present case, it is undisputed that defendant received his Miranda warnings upon arrival at the police station. It is also noteworthy that defendant, as a former police officer, had an intimate understanding of these rights.

### 2. Temporal Proximity

Weighing in favor of suppression of the statement is the temporal proximity of the arrest and the defendant's statement. Defendant gave the statement to

---

[5] Defendant raises the issue on appeal that he was illegally arrested in his home without a warrant. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, because we have determined that defendant was illegally seized without probable cause, we need not address this issue.

14

Investigator Gamblin within thirty-five (35) minutes of his arrival at the police station. However, this factor is not determinative of the issue. In Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the defendant and two others were detained by officers in a residence while other officers left to procure a search warrant. Defendant gave an incriminating statement forty-five (45) minutes after the initial detention. Although the Supreme Court recognized the short period of time between the illegal detention and the statement, the Court noted that the atmosphere during the detention was congenial and non-threatening. 448 U.S. at 108, 100 S.Ct. at 2563. Thus, the Court found that the circumstances surrounding the detention outweighed the short time span between the detention and the statement. Id.

Our situation is analogous to Rawlings. There is nothing to indicate a coercive or threatening atmosphere surrounding defendant's statement. The record indicates to the contrary. These circumstances outweigh the short time span between the detention and the statement.

### 3. Intervening Circumstances

The facts of this case are extremely unique and attenuate the taint of the illegal seizure. Defendant was a former police officer who was familiar with the procedures and policies of the Covington Police Department. He was personally acquainted with the officers involved and, in fact, was Investigator Gamblin's former partner and neighbor. He clearly understood he was merely wanted for questioning. He did not consider himself to be under arrest when he was seized, nor when he gave the statement. He was totally cooperative and willing to give a statement.

### 4. Flagrant Misconduct

Furthermore, the official misconduct in this case must be viewed in proper context. In Brown, the improper arrest was accomplished "in the hope that something might turn up," and its manner was such "to cause surprise, fright and confusion." 422 U.S. at 605, 95 S.Ct. at 2262. That was not the purpose in this case. Defendant was not taken to the police department to secure a confession. His seizure was not intended to nor did it cause surprise, fright or confusion.

15

This Court in no way condones warrantless arrests without probable cause. Nor does this Court condone a police policy of handcuffing and transporting persons whom the police merely desire to question. Specifically, this Court does not condone that which the Covington Police Department did in this case. Nevertheless, the lack of intent to secure a confession and the absence of surprise, fright or confusion mitigate the flagrancy of the misconduct.

### 5. Result

Considering the above factors in light of defendant's familiarity with the persons and procedures involved, we conclude that defendant's statement was the product of free will sufficient to "purge the primary taint of the unlawful invasion." Wong Sun v. United States, 371 U.S. at 486, 83 S.Ct. at 416. Therefore, the statement was admissible evidence.

This issue is without merit.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____

16

**CURWOOD WITT, JUDGE**


_____
**ROBERT W. WEDEMEYER, SPECIAL JUDGE**