IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2005 Session

## STATE OF TENNESSEE v. DAVID ARNOLD HUMPHREY

**Appeal from the Criminal Court for Sumner County**
**No. 764-2001     Jane W. Wheatcraft, Judge**

_____

### No. M2004-00114-CCA-R3-CD - Filed April 15, 2005

_____

The defendant, David Arnold Humphrey, entered a plea of guilt to attempt to possess more than .5 grams of cocaine for resale. As a part of the plea agreement, a Range II sentence of six years was imposed and a certified question of law was reserved for appeal. See Tenn R. Crim. P. 37 (b)(2)(i). The question, as originally approved before the filing of the notice of appeal, is "[w]hether the initial contact and subsequent seizure of the defendant were . . . proper, with said seizure resulting in the seizure of a Crown Royal bag containing cocaine."[1] The state, with the approval of the trial court, conceded that the issue was dispositive of the case. The judgment is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

John Ray Phillips, Jr., Gallatin, Tennessee, for the appellant, David Arnold Humphrey.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Dee Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 3, 2001, the defendant was at the residence of his girlfriend, Trina Glover, at 122 Electra Avenue in Gallatin. In the meantime, Police Officer David Lo, who was on bicycle patrol, received a dispatch to the Glover address for a "domestic in progress." Officer Jason Elliott, also on bicycle, followed Officer Lo to the residence. While Officer Lo walked to the front of the house, Officer Elliott walked toward the right side. When no one answered his knock on the door, Officer Lo walked around the left side of the residence toward the back and Officer Elliott walked around the other side. At that point, Officer Lo saw the defendant, who was walking away from the Glover

---

[1] Although the trial court entered an amended order further defining the question for appeal, the filing of the notice of appeal two days earlier divested jurisdiction.

residence, enter a truck which was parked in the driveway. The windows were tinted. The officer called out to the defendant, who immediately displayed nervousness and placed both hands in his pockets. When Officer Lo asked what had happened, the defendant made reference to an argument with his girlfriend over money and, at the officer's direction, kept his hands in his pockets and moved toward him. When the defendant reached the back of the truck where the two officers were standing, Officer Lo, who saw the tip of a purple bag in the defendant's pocket, directed him to remove his hands from his pockets. According to Officer Lo, the defendant "really resisted" and refused to remove his hands. When the defendant displayed an aversion to being taken by the wrists and moved toward the two officers, Officer Lo, for "officer safety," grabbed the defendant's crotch and took him to the ground. At that point, a Crown Royal bag went from the defendant's hand, "flying through the air." A field test indicated that the substance within the bag was cocaine. Afterward, Ms. Glover confirmed to the officer that she and the defendant had been in an argument.

In the trial court, the defendant argued that the original 911 call, the recording of which was not available, and dispatch for a "possible domestic" did not comprise specific and articulable facts necessary to support an investigatory stop. The evidence at the suppression hearing established that the tape recording of the 911 call to the police had been taped over and was not available as evidence for the state. In response, the state argued that other facts developed after the officers arrived at the scene and that the defendant had placed too much emphasis on the domestic complaint.

The trial court ruled that the absence of the 911 tape was not fatal for the state. After observing that the officers had acted reasonably in responding to the dispatch, the trial court concluded that all of the circumstances, especially the defendant's refusal to remove his hands from his pockets, provided the officers with a reasonable and articulable suspicion, sufficient for an investigatory stop and pat-down for safety reasons.

In this appeal, the defendant again submits that the evidence should have been suppressed because the state failed to establish that the 911 dispatcher had reasonable and articulable suspicion. He argues that the failure to produce the 911 audiotape warrants a suppression of the cocaine discovered during the investigatory stop. Relying upon State v. Moore, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989), a case in which this court reversed an order of suppression, the defendant points out that while an officer may lawfully conduct an investigatory stop based upon a police bulletin or broadcast, the prosecution has the burden of establishing that the agency responsible for the bulletin has "reasonable suspicion, supported by specific and articulable facts."

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression. U.S. Const. amend. IV; Tenn. Const. art I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal

security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S.429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); State v. Daniel, 12 S.W.3d 420 (Tenn. 2000). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

In State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993), our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30. In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The scope of review is limited. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. (1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that

may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record do novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In United States v. Drayton, 536 U.S. 194, 201-02 (2002), the Supreme Court determined that there is no Fourth Amendment violation when an officer simply approaches a person in a public place and poses a question. Even when there is no basis to suspect a crime, officers may ask questions, ask for identification, and ask for consent to conduct a search, so long as the means used to induce the cooperation are not coercive. Id.; see Daniel, 12 S.W.3d at 425. A reviewing court must examine "all the circumstances surrounding the encounter" in determining whether the law enforcement conduct would have indicated a lack of freedom "to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. As indicated, the subjective intent of the officer is not controlling. State v. Johnson, 980 S.W.2d 414 (Tenn. Crim. App. 1998).

In Illinois v. Wardlow, 528 U.S. 119 (2000), the Supreme Court observed that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Id. (citing United States v. Sokolow, 490 U.S. 1, 8-9 (1989); Florida v. Rodriguez, 469 U.S. 1, 6 (1984) (per curiam);United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975)).

In this case, the officers did not make the investigatory stop based solely upon the content of the dispatch. After knocking on the door of the Glover residence and receiving no response, the officers circled the house and found the defendant, who was walking away, start to enter a vehicle parked in the driveway. Knowing that there had been a possible domestic disturbance, Officer Lo called out to the defendant who responded nervously and placed both hands in his pockets. When the officer saw an object in one of the defendant's pockets and directed him to remove his hands, the defendant refused. When the officer attempted to restrain his wrists, the defendant resisted, advancing toward the officer. The contraband was discovered as the officer restrained the defendant, who appeared to have been attempting to dispose of the bag, by taking him to the ground. It was only after the cocaine was found in the bag that the arrest took place. It is our view that defendant's reactions to the appearance of the officers provided articulable facts warranting the investigatory stop. In our view, the officers had every reason to take precautions for their safety by asking the defendant to remove his hands from his pockets. The defendant's resistance to the request warranted further intrusive actions by the police which resulted in the discovery of the cocaine.

Accordingly the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE