IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2015


**STATE OF TENNESSEE v. BRENT HICKS**


**Appeal from the Circuit Court for Williamson County**
**No. II-CR027062     Timothy L. Easter, Judge**

_____


**No. M2014-02149-CCA-R3-CD – Filed October 30, 2015**

_____


In February 2013, the Williamson County Grand Jury indicted the Defendant, Brent Hicks, for theft of merchandise over $1,000, a Class D felony.  Following a jury trial, the Defendant was convicted as charged and sentenced to eight years in the Department of Correction.  On appeal, the Defendant contends that the evidence presented at trial is insufficient to support his conviction and that his sentence is excessive.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Sandra L. Wells, Franklin, Tennessee, for the appellant, Brent Hicks.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


**Facts**

This case arises from a theft of tools from a NAPA auto parts store in Franklin, Tennessee. Patrick Bailey testified that, on September 2, 2011, he was working at NAPA as a sales clerk when he noticed a short, heavy-set man who appeared to be leaving the

store with a box tucked under his jacket. Although Mr. Bailey was at the counter assisting a customer, he asked a co-worker if the co-worker had sold anything in a box like that carried by the man leaving the store. The co-worker, who was at a nearby register speaking to a tall, slender man, said that he had not sold a boxed item. Mr. Bailey immediately left the counter and went to the front of the store, yelling at the heavy-set man to stop. The man got into the passenger seat of a green Chevy Malibu and glared at Mr. Bailey from inside the car. Mr. Bailey then saw the tall, slender man who had been talking to his co-worker get into the driver's seat of the green Malibu. Although Mr. Bailey yelled at the men to stop, the car backed out of the parking lot and drove away. At that time, Mr. Bailey was able to record the vehicle's tag number. Soon after the men left the store, Mr. Bailey discovered that three impact wrenches were missing from the store's inventory and called the police. Mr. Bailey testified that the stolen items were worth approximately $1,120 in total.

Regarding the suspects, Mr. Bailey described the tall, slender man as standing approximately six feet, one inch tall and weighing 180 lbs. The heavy-set man at the front of the store with the box under his arm was approximately four feet, ten inches tall and weighed about 350 lbs. Mr. Bailey recalled that the heavy-set man had tattoos on his forearms. Mr. Bailey believed this man to be possibly of Hispanic descent because of the man's skin tone. During trial, Mr. Bailey was shown a photograph of the Defendant. From the photograph, Mr. Bailey identified the Defendant as the man he had seen carrying the box of items from the store. However, Mr. Bailey did not recognize the Defendant in the courtroom.

Robert Stem testified that, at the time of the theft from NAPA, he worked as a mechanic. Mr. Stem acknowledged being at the auto parts store on September 2, 2011, and that he was driving a green Chevy Malibu. Mr. Stem further admitted that he had pled guilty to the theft of the tools based upon a theory of criminal responsibility, but he claimed that he did not personally steal any of the items. Mr. Stem claimed that he could not recall whether the Defendant was at the store with him on the day of the offense. Mr. Stem acknowledged that, when he entered his guilty plea, he agreed to testify truthfully against his co-defendant. When asked if he was testifying truthfully, Mr. Stem responded, "I'm not saying one way or the other." He admitted that the Defendant was his friend and he did not want the Defendant to get into trouble. Mr. Stem recalled talking to Detective Chad Pace about the offense but stated he could not recall telling Detective Pace that the Defendant stole the tools from the store. When asked to review a police report summary of his statement to refresh his memory, Mr. Stem refused to repeat what he told Detective Pace. On cross-examination, Mr. Stem testified that, around the time of the offense, he employed a Cuban man who had a dark complexion. Mr. Stem stated that this employee occasionally accompanied him to the auto parts store.

Detective Chad Pace, with the Franklin Police Department, testified that he investigated the theft from NAPA that occurred on September 2, 2011. Based upon the vehicle description and tag number provided by the store clerk, Detective Pace learned that Mr. Stem had been driving the green Malibu on the day of the offense. When Detective Pace interviewed Mr. Stem, Mr. Stem stated that the Defendant was with him at the time of the theft. Mr. Stem admitted to the theft of the wrenches and said that the Defendant was his accomplice. Mr. Stem told Detective Pace that it had been the Defendant's idea to steal the tools and that this was how the Defendant made money.

Detective Pace testified that, in a video-recorded interview with the Defendant, the Defendant initially denied any involvement in the theft. However, the Defendant eventually admitted that he was with Mr. Stem at NAPA on September 2, 2011. The Defendant accurately described the stolen wrenches and admitted that he carried two boxes out of the store "in front of himself." The Defendant said that he thought Mr. Stem had purchased the items and he was carrying them out to the car for Mr. Stem. The Defendant denied that he had tried to hide the items as he left the store. During the interview, Detective Pace asked the Defendant whether he had any tattoos, and the Defendant lifted his shirt sleeve and showed Detective Pace a tattoo on his upper arm. Detective Pace testified that the Defendant did not have any tattoos on his forearms. Based upon this testimony, the jury found the Defendant guilty of theft over $1,000.

At a subsequent sentencing hearing, the Defendant testified that, if he were to be released on probation, he intended to live with a friend in Nashville. The Defendant then explained that he had a history of medical problems. He stated that he was diabetic and had "bad" arthritis. The Defendant further stated he previously had open heart surgery, dislocated knees, and torn rotator cuffs in his shoulders. The Defendant testified that he was not a threat to society and that he wanted to "get [his] disability and go home to Texas and live in peace." On cross-examination, the Defendant testified that he was fifty-eight years old. He admitted that he had been convicted of thirty-three misdemeanors and three felonies since turning forty. The Defendant explained that approximately nine of the misdemeanor convictions were for theft under $500 and twelve were for driving on a revoked license. The Defendant acknowledged that he had been placed on probation in the past and that he had violated probation "a few" times.

The State then introduced the presentence report and certified copies of the Defendant's prior convictions. These exhibits indicated that the Defendant had two previous felony convictions for theft, a felony conviction for possession of a controlled substance for resale, and multiple misdemeanor convictions. The State's proof further established that the Defendant was on probation for theft out of Sumner County at the time he committed the instant offense.

The trial court found the Defendant to be a Range II multiple offender based upon his prior convictions. In setting the length of the Defendant's sentence at eight years, the trial court considered as enhancement factors the Defendant's previous history of criminal convictions in addition to those necessary to establish the appropriate range and that the Defendant was on probation for theft at the time of the instant offense. The trial court stated that the Defendant "was pretty much a thief since the age of 40. And that seems to be the way he lives is by stealing other people's stuff." As a mitigating factor, the trial court considered that the Defendant's conduct did not cause or threaten bodily injury. The trial court also determined that the Defendant was not an appropriate candidate for probation, noting the Defendant's "long history of criminal conduct" and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. Based upon these considerations, the trial court ordered the Defendant to serve his eight-year sentence. This appeal followed.

## Analysis

The Defendant argues that the evidence presented at trial is insufficient to support his conviction and that his sentence is excessive. At the outset, the State contends this appeal should be dismissed because the Defendant's motion for new trial and subsequent notice of appeal were untimely filed.

Tennessee Rule of Criminal Procedure 33(b) requires that a motion for new trial be made in writing and filed within thirty days of the date the sentencing order is entered. The time for filing a motion for new trial is mandatory and may not be extended. Tenn. R. Crim. P. 45(b)(3); State v. Johnson, 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998). An untimely filed motion for new trial is a nullity and will not toll the thirty-day time period for filing a notice of appeal. State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); see Tenn. R. App. P. 4(c).

In this case, the judgment of conviction was entered on June 25, 2014, and the Defendant's motion for new trial was filed more than thirty days later on July 31, 2014. Although the trial court entered an order denying the motion for new trial on October 28, 2014, the motion for new trial was a nullity and did not toll the thirty-day time period for the notice of appeal. Consequently, the Defendant's notice of appeal was also untimely when it was filed on October 30, 2014.

As noted by the State, a timely filed notice of appeal is not jurisdictional in this court, and we may elect to waive the requirement in the interest of justice. Tenn. R. App. P. 4(a). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" State v.

Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (quoting State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). Here, it appears that the Defendant attempted to comply with the time requirements for filing an appeal. The record shows that the Defendant filed a pro se notice of appeal on July 25, 2014, within thirty days of the entry of the judgment of conviction. However, the Defendant later filed a motion requesting a voluntary dismissal of the appeal after trial counsel filed a motion for new trial.[1] Although the Defendant has not specifically asked this court to waive the requirement of a timely notice of appeal, the Defendant raises only the issues of sufficiency of the evidence and sentencing, and this court would not be precluded from reviewing these issues despite the Defendant's untimely motion for new trial. See State v. Boxley, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001) (citing State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997)). For these reasons, we conclude that the "interest of justice" is best served by waiving the timely notice of appeal.

*Sufficiency of the Evidence*

The Defendant contends that the evidence is insufficient because the State failed to establish his identity as the perpetrator of the offense. The State responds that the evidence is sufficient to support the Defendant's conviction for theft over $1,000. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded on other grounds by Tenn. R. Crim. P. 33 as stated in State v. Moats, 906 S.W.2d 431, 434 n.1 (Tenn. 1995). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle,

---

[1] This court granted the Defendant's motion to voluntarily dismiss his appeal on September 24, 2014.

639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

The identity of the perpetrator is "an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." Id. (internal quotation marks omitted). The question of identity is a question of fact left to the trier of fact to resolve. State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

"[A] person commits theft of property if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly . . . [r]emoves, takes possession of, or causes the removal of merchandise." Tenn. Code Ann. § 39-14-146(a)(2) (2010). Theft of property is a Class D felony if the value of the property obtained is $1,000 or more but less than ten thousand dollars $10,000. Tenn. Code Ann. § 39-14-105(a)(3) (2010).

The evidence, when viewed in the light most favorable to the State, shows that the Defendant stole three impact wrenches from NAPA auto parts store that were worth a total of $1,120. In his brief, the Defendant attacks the testimony of the State's main identification witness, Mr. Bailey, as unreliable.[2] The Defendant seems to forget, however, that he admitted to Detective Pace that he was inside the auto parts store on September 2, 2011, and that he carried the box containing the wrenches out of the store. Thus, the Defendant's own admissions support Mr. Bailey's identification of the Defendant as the man he saw removing merchandise from the store. It was for the jury to determine whether the Defendant removed the merchandise "with the intent to deprive [the] merchant of the stated price of merchandise" or whether, as the Defendant claimed, he had innocently relied upon Mr. Stem's statement that Mr. Stem had already paid for the items. Based upon the verdict, the jury clearly accredited the State's proof as to the Defendant's identity and rejected the Defendant's claim that he lacked intent to deprive NAPA of the price of the merchandise. As noted previously, questions of fact and the credibility of witnesses are resolved by the jury, and this court will not reweigh the evidence presented at trial. Cabbage, 571 S.W.2d at 835; Crawford, 635 S.W.2d at 705. Thus, we conclude that the evidence presented at trial is sufficient for any rational trier of fact to find the Defendant guilty beyond a reasonable doubt of theft over $1,000.

---

[2] In his challenge to the sufficiency of the evidence, the Defendant seems to additionally assert that Mr. Bailey's photographic identification of the Defendant at trial was unnecessarily suggestive and resulted in a due process violation. However, we conclude that the Defendant has waived consideration of this issue by failing to raise an objection before or during trial and by failing to include the issue in a timely filed motion for new trial. See Tenn. R. App. P. 36(a).

*Sentencing*

The Defendant also challenges the trial court's imposition of an eight-year sentence as excessive. The State responds that the trial court did not abuse its discretion in sentencing the Defendant. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. Bise, 380 S.W.3d at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Id. at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of

potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2014).

Additionally, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2014).

We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of [the Sentencing Act]." Id. at 343 (internal quotation marks omitted). "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2014).

In this case, the trial court properly considered the principles and guidelines of sentencing and placed on the record the enhancement and mitigating factors it considered, as well as its reasons for the sentence imposed. The Defendant's eight-year sentence is within the applicable range for his conviction. See Tenn. Code Ann. § 40-35-112(b)(4). Moreover, the trial court considered the confinement considerations and found that the Defendant had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied to the Defendant without success. The record fully supports the trial court's application of the various enhancement and mitigating factors and its findings under the confinement considerations. Thus, the Defendant has not established that the trial court abused its discretion in sentencing, and he is not entitled to relief.

## Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE