# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 19, 2011

## STATE OF TENNESSEE v. ELMI ADULAHI ABDI

### Direct Appeal from the Criminal Court for Davidson County
### No. 2008-B-1061    Cheryl Blackburn, Judge

### No. M2010-00277-CCA-R3-CD - Filed June 29, 2011

A Davidson County jury convicted the defendant, Elmi Adulahi Abdi, of attempted aggravated robbery, a Class C felony. The trial court sentenced him as a Range II, multiple offender to ten years in the Tennessee Department of Correction, consecutive to his sentence in Davidson County case number 2006-A-30. On appeal, the defendant argues that (1) the evidence was insufficient to support his conviction; (2) the trial court erred by admitting videotape evidence; and (3) the trial court erred by enhancing the defendant's sentence and ordering him to serve his sentence consecutive to case number 2006-A-30. Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Ashley Preston (at trial and on appeal), and Jason Gichner (at trial), Nashville, Tennessee, for the appellant, Elmi Abdulahi Abdi.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

A Davidson County grand jury indicted the defendant, Elmi Abdulahi Abdi, for attempted aggravated robbery, a Class C felony. The matter proceeded to trial on September 21 and 22, 2009.

The victim testified that on January 1, 2008, she was the front desk clerk at the Extended Stay America Hotel located at 2525 Elm Hill Pike, Nashville, Tennessee. On that day, she arrived at work at 7:00 a.m. Before she could remove money from the hotel's safe to put in her register for the day, she heard the door open and went to the front desk. The victim testified that the defendant was standing at the counter, wearing a stocking cap, a gray fleece jacket, and dark sunglasses. She said that he demanded that she give him all of the money. He had his hand in a pocket of his jacket, and she said that "he lifted his hand up towards my head like he had a gun." She told him that she had not taken the money out of the safe yet and showed him the empty register drawer. He demanded that she let him behind the counter and said, "I ought to kill you." The victim testified that after he said that, she began moving to the side door and then turned and ran through the back door. She said that she was afraid that he would shoot her in the back when she turned to run. She went up to the third floor, and knocked on a guest's door. The guests let her in, and they called the police. When the police arrived, she told them what happened. The following day, a detective at the Hermitage Precinct showed her a set of photographs. She identified a photograph of the defendant as the person who tried to rob her. She also identified the defendant in the courtroom.

On cross-examination, the victim denied that the man who tried to rob her was black. She said that she recalled the description that she gave to the police but did not recall telling the police that the man was black.

On re-direct examination, the victim stated that she was "a hundred percent" certain that the defendant was the person who tried to rob her. She said that she would not describe the defendant as a black man.

Metropolitan Nashville Police Officer Geoffrey Thiede testified that he responded to an attempted robbery call at 2525 Elm Hill Pike on January 1, 2008. He spoke with the victim and filled out an incident report. He said that the description he recorded was "a generic description of a male black, approximately twenty-five to thirty years old, 5' 9", 185 pounds." Officer Thiede noted in his report that the suspect had "his left hand . . . in the pocket of the fleece jacket to possibly give [the victim] the inference that maybe he had a weapon in his hand."

On cross-examination, Officer Thiede agreed that the victim described the suspect as a black male. He further agreed that he indicated in his report that there was no weapon involved. He recalled that the victim told him that the hotel had video surveillance but that she did not have access to it. He did not know whether detectives followed up on the video surveillance.

Metropolitan Nashville Police Detective James Chastain testified that he prepared a photographic lineup including the defendant's photograph.

Metropolitan Nashville Police Detective Jeff Ball testified that he was the lead detective in this case. He spoke with the victim on January 2, 2008, and showed her a photographic lineup. She identified the defendant as the person who tried to rob her. He learned that the hotel had video surveillance, and the police collected a videotape from the hotel. Detective Ball testified that the Tech Support Unit viewed the videotape, but the attempted robbery was not captured on the videotape. He said that the police received an anonymous call that the defendant was at the Breckinridge Apartments on Plus Park Boulevard. The police arrested the defendant in that area. Detective Ball spoke to the defendant at the Hermitage Precinct. The defendant signed a rights waiver. He told the detective that he did not take any money and that it was his hand in his pocket. The defendant said he might have attempted it and that he was drunk. He explained that he lost his memory when he was drunk. Detective Ball said that he had a surveillance video from a business three to four miles away from the hotel that captured the defendant at 9:08 a.m., according to the time on the videotape. The detective said that, based on his investigation, the clock on the videotape was one hour off. The defendant identified himself in the video. The detective testified that the clothing worn by the defendant in the video matched the description given by the victim.

On cross-examination, Detective Ball agreed that the defendant never specifically said that he attempted to rob anyone at the hotel.

The state recalled the victim, who testified that the defendant did not smell of alcohol, speech was not slurred like a drunk person, nor did he walk abnormally.

Following the close of proof and deliberations, the jury convicted the defendant of attempted aggravated robbery, a Class C felony. The trial court sentenced him as a Range II, multiple offender to serve ten years in the Tennessee Department of Correction, consecutive to Davidson County case number 2006-A-30. The defendant filed an untimely motion for new trial, which the trial court heard and denied.

In the interest of justice, this court granted the defendant's motion for waiver of the thirty-day limit for filing a notice of appeal. The defendant filed a notice of appeal on March 19, 2010.

**Analysis**

The defendant argues that (1) the evidence was insufficient to support his conviction; (2) the trial court erred by admitting videotape evidence; and (3) the trial court erred by

ordering him to serve his sentence consecutive to case number 2006-A-30. The state responds that this court should dismiss the appeal for failure to file a timely notice of appeal; however, this court has previously granted the defendant's motion for waiver of the limitations period in the interest of justice. The state alternatively argues that (1) the evidence was sufficient because of the victim's identification of the defendant; (2) the defendant waived appellate review of the evidentiary issue by failing to file a timely motion for new trial; and (3) the trial court properly sentenced the defendant.

## I. Sufficiency of the Evidence

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

Initially, we note that the defendant does not argue that the evidence was insufficient to prove the offenses for which he was convicted, but rather, the defendant maintains that the evidence was insufficient to establish his identity as a participant in the offense for which he was convicted. The identity of the offender is an essential element of any crime. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Identification of the defendant as the perpetrator of the offense is a question of fact for the jury. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Here, the victim positively identified him in a photographic lineup the day after the attempted robbery and identified him again in the courtroom during the trial. She stated that she was "a hundred percent" certain that the defendant was the person who tried to rob her. A

victim's identification alone is sufficient to support a conviction. *Id.* Therefore, we conclude that the jury accredited the victim's testimony, and based on her identification, any rational trier of fact could have found the defendant guilty of attempted aggravated robbery.

## II. Waiver

The defendant argues that the trial court erred by admitting a video of his interview with police over his objection. The state responds that the defendant waived this issue by filing an untimely motion for new trial. We agree with the state.

A motion for new trial "shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. *See* Tenn. R. Crim. P. 45(b)(3); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. *Dodson*, 780 S.W.2d at 780. It deprives the appellant of the opportunity to argue on appeal any issues that should have been raised in the motion for new trial. *Martin*, 940 S.W.2d at 569. "The fact that a trial judge erroneously considers and rules upon a motion that has not been timely filed does not validate the motion . . . ." *Dodson*, 780 S.W.2d at 780. Furthermore, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal; thus, an untimely motion for new trial will also result in an untimely notice of appeal. *See State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Unlike the untimely filing of the notice of appeal, this court does not have the authority to waive the untimely filing of a motion for new trial. *See* Tenn. R. App. P. 4(a); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980). However, this court, in its discretion, may take notice of plain error which affects a substantial right of the defendant where it may be necessary to do substantial justice. Tenn. R. App. P. 36(b); *State v. Johnson*, 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998).

In this case, the defendant filed his motion for new trial on December 9, 2009, more than thirty days after the court entered the sentencing order. Therefore, he cannot now argue an issue - admission of certain evidence - that he should have raised in a timely motion for new trial. Additionally, the defendant has not shown that consideration of this issue is "necessary to do substantial justice," so we decline to review the issues for plain error. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). We conclude that the defendant has waived his argument that the trial court erred by admitting video of his interview with police.

## III. Sentencing

For his final argument, the defendant argues that the trial court erred by enhancing his sentence beyond the minimum and ordering him to serve his sentence consecutively to his

sentence in Davidson County case number 2006-A-30. Specifically, he claims that the trial court did not express its reasoning with particularity.

A defendant's sentence is reviewed by the appellate courts de novo with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). While determining or reviewing a sentence, the courts must consider: (1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of the following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a

pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. *Imfeld*, 70 S.W.3d at 708. First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

In this case, the trial court determined, and the defendant does not challenge, that he was a Range II, multiple offender. As such, the defendant was subject to a sentence of six to ten years for attempted aggravated robbery, a Class C felony. *See* Tenn. Code Ann. § 40-35-112(b)(3). The trial court found that the following enhancement factors applied: enhancement factor (1), the defendant had a previous history of criminal convictions or behavior beyond that necessary to establish the sentencing range; enhancement factor (8), the defendant had previously failed to comply with the conditions of a sentence involving release into the community; and enhancement factor (13), the defendant was on parole when he committed the instant offense. Furthermore, the trial court ordered the defendant to serve his sentence consecutively to a prior sentence based on findings that he had an extensive criminal record, was a dangerous offender, and had been on parole when he committed the

instant offense. The trial court supported its finding that the defendant was a dangerous offender by finding that the aggregate sentence length reasonably related to the seriousness of the offense and that it was necessary to protect the public from further criminal conduct by the defendant. We conclude that the trial court followed the statutory sentencing procedure, gave due consideration and proper weight to the factors and sentencing principles, and made findings of fact adequately supported by the record. As such, we affirm the trial court's sentencing.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE