IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

## STATE OF TENNESSEE v. OBADA D. ABUJABER

**Appeal from the Circuit Court for Madison County**
**No. 14277     Roy B. Morgan, Jr., Judge**
_____

**No. W2015-00590-CCA-R3-CD  -  Filed August 25, 2016**
_____

The defendant, Obada D. Abujaber, was indicted for two counts of aggravated assault, two counts of possession of a Schedule IV controlled substance, and one count of vandalism of property valued at $500 or more but less than $1000. Following trial, a jury found the defendant not guilty of one count of aggravated assault, guilty of one count of the lesser-included offense of attempted aggravated assault, guilty of two counts of the lesser-included offenses of attempted possession of a Schedule IV controlled substance, and guilty of one count of vandalism of property valued at less than $500. The trial court sentenced the defendant to an effective sentence of four years, eleven months, and twenty-nine days. On appeal, the defendant argues the evidence was insufficient to support his convictions. After review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed.

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Obada D. Abujaber.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan Wardle, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Factual and Procedural History*

On November 5, 2013, the defendant and his girlfriend, victim Shacara Tinsley, went to an apartment on Park Ridge Drive in Jackson, Tennessee. Alisha Harley, Ms. Tinsley's mother, and Zachary Harley, Ms. Tinsley's brother, lived in the apartment and

were home. Ms. Tinsley's eight-year old daughter, A.T.,[1] who stayed in the apartment with her grandmother while her mother went to work earlier that evening, was also present. According to Ms. Tinsley, after she got home from work, the defendant asked her to drive him to the apartment so he could ask Mr. Harley about his stolen phone. Ms. Tinsley also testified that the defendant was armed with a handgun that evening.

When they arrived at the apartment, the defendant was angry and began to argue with Mr. Harley. The defendant accused Mr. Harley of stealing his phone, and according to Ms. Tinsley and A.T., both of whom testified at trial, the defendant then pointed the gun at Mr. Harley. The defendant denied pointing the gun at Mr. Harley, and instead testified that the two argued, and after Mr. Harley began jumping around and hit a window, he told Ms. Tinsley that they should leave. Mr. Harley called the police, and the defendant, Ms. Tinsley, and A.T. left in Ms. Tinsley's vehicle. After leaving, the defendant asked Ms. Tinsley to take him to the home of Christopher Currie.

At trial, the parties presented conflicting evidence regarding what happened after the defendant, Ms. Tinsley, and A.T. left the apartment. According to both Ms. Tinsley and A.T., Ms. Tinsley and the defendant began to argue in the car. Ms. Tinsley was angry due to the way the defendant treated her brother, and she threatened to call the police. The defendant took Ms. Tinsley's phone in an effort to stop her from calling. Ms. Tinsley got upset and kicked the defendant out of her car.

According to Ms. Tinsley, after the defendant got out of the car, A.T., who was in the backseat, began to cry and said, "Mama go. He's going to shoot us." Ms. Tinsley then parked on the side of the road and walked towards the defendant in an effort to get her phone. The defendant began to hit her over the head and kicked the side of her car, denting it. Pictures of the dent taken by law enforcement officers at the scene were introduced into evidence. Ms. Tinsley testified that she put her hands over her head to protect herself from the blows, causing fingernails on both hands to break. A.T. witnessed the altercation. According to both Ms. Tinsley and her daughter, the defendant pointed his gun at the car, putting them in fear for their lives. Ms. Tinsley testified that the defendant threatened to kill them, but later recanted this statement, saying that she could not remember. Ms. Tinsley then stopped a woman driving down the street and called the police from her cell phone.

According to the defendant, after leaving the apartment, Ms. Tinsley became angry and began hitting him in the head with her right hand while driving. The defendant

---

[1] It is the policy of this Court to refer to minor victims by their initials.

testified that Ms. Tinsley broke the fingernails on her right hand when she was hitting him but offered no explanation as to why the fingernails on her left hand were broken. The defendant stated that he took Ms. Tinsley's cell phone to prevent her from calling the police and because her brother had taken his phone. The defendant stated that he got out of the car because Ms. Tinsley was hitting him and denied pointing the gun at Ms. Tinsley and A.T.

After exiting the car and having a continued altercation with Ms. Tinsley, the defendant walked to the home of Christopher Currie. Mr. Currie testified that he and the defendant worked together in a restaurant. Due to crime in the area, Mr. Currie purchased a gun to keep in the restaurant. Mr. Currie would leave the gun with the defendant when the defendant had to close. Mr. Currie testified that the defendant was trying to return the gun to him that night. The defendant confirmed that he was in the process of returning the gun to Mr. Currie at the time of his arrest.

Officer Gary Longmire with the Jackson Police Department testified that he responded to a call to 130 Linda Vista Lane on November 5, 2013. It was a follow-up to an aggravated assault occurring in an apartment on Park Ridge Drive. Officer Longmire found the defendant on the back porch of the residence, told him to get on the ground, and arrested him. Approximately six feet from the location of the arrest, Officer Longmire found a ".40 caliber Smith and Wesson Hi-Point automatic gun" and a pill bottle in the grass. Mr. Currie identified the gun as the gun he purchased to keep at the restaurant and let the defendant use. The defendant confirmed the gun was the same gun he had with him on November 5, 2013. The defendant admitted to throwing the gun in the grass prior to his arrest. The defendant, however, denied knowledge of the pill bottle found next to the gun, stating, "I don't know what to tell you." The defendant refused to look at photographs documenting the proximity of the pill bottle to the gun. Mr. Currie and his wife, Shannon Currie, who also testified for the State, denied ownership of the pill bottle and its contents. Mr. and Mrs. Currie did not know how the pill bottle ended up in their yard.

Shalandus Garrett, a special agent for the Tennessee Bureau of Investigation, testified as an expert for the State. As a special agent, her duties include testing controlled substances brought to the lab by law enforcement. Agent Garrett was assigned the task of testing the pills found in the yard of 130 Linda Vista Lane on November 5, 2013. On visual inspection, Agent Garrett identified the ten orange tablets as diazepam and the fourteen blue tablets as alprazolam. Using one pill each for testing, she then used gas chromatography mass spectrometry to confirm the substances. Agent Garrett subsequently prepared a report positively identifying the controlled substances as

diazepam and alprazolam. Two peers confirmed her methodology and the results. This report was introduced into evidence.

The State rested after calling Ms. Tinsley, Officer Longmire, Mr. Currie, Agent Garrett, Mrs. Currie, and A.T. to testify. Outside the presence of the jury, the State pointed out that it failed to present any evidence as to the value of the damage to Ms. Tinsley's car, so all parties agreed the jury would be charged with the lesser offense of vandalism of property under $500. The defendant then recalled Ms. Tinsley, who admitted that prior to trial she had told the victim impact coordinator that she could not remember whether the defendant threatened to kill her. Ms. Tinsley stated that she said this because she did not want to testify against the defendant. The defendant then testified on his own behalf. In addition to testifying as to his version of the events occurring on November 5, 2013, the defendant stated that he and Ms. Tinsley continued to have a romantic relationship and live together for six months following his arrest.

The jury returned the following verdict: Count 1, the aggravated assault of Ms. Tinsley, not guilty; Count 2, the aggravated assault of A.T., guilty of the lesser-included offense of attempted aggravated assault; Count 3, possession of diazepam, guilty of the lesser-included offense of criminal attempt of possession of diazepam; Count 4, possession of alprazolam, guilty of the lesser-included offense of criminal attempt of possession of alprazolam; and Count 5, vandalism, guilty. In addition, the jury assessed a $1000 fine on Count 3, a $1000 fine on Count 4, and a $750 fine on Count 5. At a subsequent sentencing hearing, the trial court sentenced the defendant to an effective sentence of four years, eleven months, and twenty-nine days.

Over thirty days after the entry of the judgments of conviction, the defendant filed a pro se "Motion to Appeal," followed by an untimely motion for a new trial. The trial court denied the motion for a new trial, and this appeal followed. On appeal, the defendant argues the evidence is insufficient to support his convictions because Ms. Tinsley testified that she was not scared, could not remember whether the defendant threatened to kill her, and spent the night with the defendant on many occasions subsequent to his arrest. The State argues waiver due to the defendant's failure to file a timely appeal and, in the alternative, that the evidence was sufficient. In the interest of justice, this Court accepts the defendant's late-filed appeal. After a thorough review of the record, we affirm the judgments of the trial court.

*Analysis*

## I.     Waiver

At the outset, the State contends this appeal should be dismissed because the defendant's motion for new trial and subsequent notice of appeal were untimely filed. Tennessee Rule of Criminal Procedure 33(b) requires that a motion for new trial be made in writing and filed within thirty days of the date the judgment is entered. The time for filing a motion for new trial is mandatory and may not be extended. Tenn. R. Crim. P. 45(b)(3); *State v. Johnson,* 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998). An untimely filed motion for new trial is a nullity and will not toll the thirty-day time period for filing a notice of appeal. *State v. Davis,* 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); *see* Tenn. R. App. P. 4(c).

In this case, the judgments of conviction were entered on December 11, 2014. The defendant filed a pro se motion to appeal on January 30, 2015, over thirty days after the entry of the judgments. The State responded, treating the motion as one for a new trial, arguing the evidence was sufficient to support the defendant's convictions and there is no basis in law for the defendant to receive a new trial. The State did not raise the untimeliness of the motion in its response. Counsel for the defendant subsequently filed a motion for new trial on February 20, 2015, arguing the evidence was insufficient to support the defendant's convictions and that he should have been allowed alternative sentencing. The trial court heard the defendant's motion for new trial on March 9, 2015, and subsequently entered an order denying the motion on March 26, 2015. In the order denying the motion for a new trial, the trial court first noted that the State did not object to the untimely filing of the motion and then made these findings: the evidence was sufficient to support the jury's verdict; the defendant was properly sentenced; and all other arguments raised by the defendant lacked merit. The trial court's order denying the motion for a new trial is silent as to any attempt by defense counsel to advise the trial court at the hearing that he had been retained to represent the defendant at trial only, not appeal. Following the hearing but prior to the entry of the trial court's written order denying his motion for a new trial, the defendant filed a pro se notice of appeal on March 25, 2015.

Even if the defendant's pro se motion for appeal was properly treated as a motion for a new trial, because it was filed over thirty days after the filing of the judgments, it was a nullity and did not toll the thirty-day time period for the notice of appeal. For the same reason, the motion for a new trial filed on February 20, 2015, was also a nullity and did not toll the time for appeal. Consequently, the defendant's notice of appeal was also untimely.

- 5 -

A timely filed notice of appeal is not jurisdictional in this Court, and we may elect to waive the requirement in the interest of justice. Tenn. R. App. P. 4(a). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (quoting *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). A review of the technical record shows the defendant terminated his attorney on October 15, 2014, and the lawyer subsequently filed a motion to withdraw on October 24, 2014. There is no indication in the record before this Court as to whether this motion was heard, but the defendant's trial went forward on November 3, 2014, and at the time, the defendant continued to be represented by the same lawyer. It appears that post-trial, the defendant again attempted to terminate his lawyer, resulting in the pro se filing of one post-trial motion and his notice of appeal.

Pursuant to Tennessee Rule of Criminal Procedure 37(e)(1), "An attorney retained by the defendant to represent the defendant for the trial but not for appeal shall timely advise the trial court of this fact at the hearing on the motion for new trial. Thereupon, such counsel will be permitted to withdraw as counsel of record . . . ." The record does not contain any notice from the defendant's attorney informing the trial court that his agreement did not include appellate representation. Accordingly, after receiving the defendant's pro se notice of appeal, this Court remanded this appeal to the trial court for a determination of the defendant's status and, potentially, for the appointment of counsel. On October 9, 2015, this Court entered an order finding that the trial court appointed J. Colin Morris, the same lawyer who represented the defendant in the trial court, to represent the defendant on appeal.

The record shows the defendant, who at least for a short period of time may have been pro se, attempted to comply with the Rules of Criminal Procedure by filing a document titled "Motion to Appeal." While this motion was filed over thirty days after the entry of the jury's verdict, the State treated it as a motion for a new trial and never raised the untimeliness of the motion before the trial court. The defendant's lawyer subsequently tried to remedy the error by filing a motion for a new trial, and while this motion was also untimely, the State did not object. Although the defendant has not specifically asked this Court to waive the requirement of a timely notice of appeal, the defendant now challenges only the sufficiency of the evidence to support his convictions. Despite the untimely filing of the defendant's motion for a new trial, this Court is not precluded from reviewing this issue. *See State v. Boxley*, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001) (citing *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App.

1997)). For these reasons, we conclude that the "interest of justice" is best served by waiving the timely notice of appeal.

## II.     Sufficiency of Evidence

The defendant argues that the evidence presented at trial is insufficient to support his convictions. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or

circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant does not challenge the specific proof needed to establish each element of attempted aggravated assault, attempted possession of a Schedule IV controlled substance, and vandalism. Rather, the defendant argues the evidence was insufficient to convict him of attempted aggravated assault because Ms. Tinsley testified that she was not scared of him, could not remember whether the defendant threatened to kill her, and continued to live with the defendant after the dispute. The defendant further argues that Ms. Tinsley's continued relationship with him after the argument should have convinced any trier of fact that he was not guilty of the two counts of drug possession. The defendant does not offer an explanation for why the evidence was insufficient to support his conviction for vandalism. After reviewing the evidence in a light most favorable to the State, we respectfully disagree with the defendant.

A.     **Count 2 - Aggravated Assault and Attempted Aggravated Assault of A.T.**

While the defendant appears to challenge the sufficiency of the evidence to support a conviction for the aggravated assault of Ms. Tinsley, the jury found the defendant not guilty on all counts of aggravated assault related to the adult victim, Shacara Tinsley. The attempted aggravated assault conviction being appealed by the defendant instead relates to Ms. Tinsley's daughter, A.T. We will, therefore, consider whether the evidence was sufficient to support the jury's finding of guilt under Count 2, the attempted aggravated assault of A.T.

Pertinent to this case, aggravated assault occurs when a person "[i]ntentionally or knowingly commits an assault," and the assault "[i]nvolved the use or display of a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(2). An assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). Criminal attempt occurs when a person "[a]cts with

intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

Both Ms. Tinsley and A.T. testified that the defendant had a gun with him in the apartment on Park Ridge Drive on November 5, 2013. The defendant, Ms. Tinsley, and A.T. all testified that the defendant had a gun with him while traveling in Ms. Tinsley's car after leaving the apartment on November 5, 2013. A.T. and her mother both testified that A.T. was crying during the altercation between Ms. Tinsley and the defendant. A.T. testified that she was scared of the gun and, after the defendant exited the car, thought he was going to shoot her mother and her. There was also testimony at trial that the defendant pointed the gun at Ms. Tinsley's car, while both Ms. Tinsley and A.T. were inside of it, and threatened to kill them.

When reviewing the evidence in a light most favorable to the prosecution, the proof presented at trial was sufficient for a rational trier of fact to find the essential elements of attempted aggravated assault of A.T. beyond a reasonable doubt. Ms. Tinsley's admission that a year after the event she could not remember whether the defendant actually threatened to kill her does not create reasonable doubt, nor does her ongoing relationship with the defendant following the assault. The jury determines the credibility of witnesses and the weight afforded to the evidence. On appeal, this Court does not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. By its finding of guilt as to the attempted aggravated assault of A.T., the jury resolved any inconsistencies in testimony in favor of the State. The defendant is not entitled to relief on this issue.

## B. Counts 3 and 4 - Possession and Attempted Possession of a Schedule IV Controlled Substance

The defendant further challenges the sufficiency of the evidence to support his convictions for attempted possession of diazepam and alprazolam. According to the defendant, testimony regarding his continued relationship with Ms. Tinsley following their altercation should have also convinced any trier of fact that he was not guilty of drug possession. The State argues the evidence was more than sufficient for the jury to conclude that the defendant took a substantial step toward possessing a controlled substance. We agree with the State.

"It is an offense for a person to knowingly possess . . . a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or

order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a). Alprazolam and diazepam are both Schedule IV controlled substances. Tenn. Code Ann. § 39-17-412(c). Criminal attempt occurs when a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

At trial, the defendant admitted to throwing the gun in the grass immediately prior to his arrest. Officer Longmire testified that the pill bottle was found next to this gun. Agent Garrett testified that the pill bottle contained ten diazepam and fourteen alprazolam tablets. She confirmed the substances through scientific testing, and the results were peer reviewed. Mr. and Mrs. Currie, who lived in the residence where the defendant was arrested, testified that the diazepam and alprazolam tablets did not belong to them, and they had no knowledge of why the controlled substances were in their yard. The defendant denied knowing how the pills ended up next to the gun he threw into the grass and refused to look at a photograph entered into evidence documenting the proximity of the pills to the gun.

These facts, viewed in a light most favorable to the State, demonstrate that the defendant, at a minimum, attempted to possess the diazepam and alprazolam tablets. There was no evidence at trial that the defendant possessed a valid prescription for these controlled substances. Rather, the undisputed evidence established that the pills were found in close proximity to the gun the defendant admittedly threw prior to his arrest. Again, the trier of fact weighs the evidence and determines the credibility of witnesses. This Court is not to reweigh this evidence on appeal. The jury resolved any doubt created by the defendant's expressed lack of knowledge regarding the pill bottle in favor of the State. The defendant is not entitled to relief on this issue. We affirm the judgments of the trial court.

### C.    Count 5 - Vandalism

The defendant does not offer an explanation for why the evidence does not support his vandalism conviction. Vandalism occurs when a person "[c]auses damages to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408(b)(1). According to the proof at trial, the defendant kicked Ms. Tinsley's car, causing a dent. This was sufficient to support the defendant's conviction for vandalism. The judgment of the trial court is affirmed.

*Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.


_____
J. ROSS DYER, JUDGE